OPINION OF THE COURT
John F. O’Donnell, J.
The respondent has filed objections to an order of a Hearing *462 Examiner which assumed jurisdiction over this support enforcement matter. This court has reviewed the respondent’s objections and exhibits as well as a letter memorandum submitted to the Hearing Examiner by the petitioner.
On April 19, 1973 the parties were divorced in Pima County, Arizona. The petitioner was awarded custody of the parties’ daughter, Michelle, who is now 21 years old. The respondent was ordered to pay $100 per month for child support. On September 16, 1983, an order was issued by the Pima County Superior Court incorporating a stipulation setting child support arrears in the amount of $1,117 through August 1983. Additionally, the Arizona court ordered respondent to pay $100 per month on the arrears. After satisfaction thereof, child support was to increase to $200 per month. An income deduction order was included in said order.
The petitioner then filed a series of petitions in this court requesting, inter alia, increased child support, child support beyond the age of 21, and the establishment of $23,500 in child support arrears. In one of these petitions, dated November 19, 1991, the petitioner alleges that she was the defendant and the respondent was the plaintiff in a New York divorce action. These petitions were served on the respondent in Arizona through regular mail or by process server. Oliver Hamilton, Esq., who had served as counsel to the respondent in the Arizona divorce action, wrote a number of letters to the Hearing Examiner contesting this court’s assumption of personal jurisdiction over the respondent. Mr. Hamilton indicated, contrary to the petitioner’s allegations, that there had never been a divorce action in this or any other New York State court. In a letter dated April 16, 1992 the respondent’s counsel explains that the petitioner came to Tucson in 1971 to institute, as plaintiff, a "long and bitterly contested divorce action against Keith Leroy Porter.”
The Hearing Examiner received the correspondence from Mr. Hamilton and asked for authority from the petitioner as to how this court could entertain personal jurisdiction over the respondent. In a letter dated June 22, 1992 the petitioner argues that, under CPLR 302 "if a claim for support arises in New York, then a Family Court may exercise long-arm jurisdiction over the respondent.”
CPLR 302 (b) provides: "(b) Personal jurisdiction over nonresident defendant in matrimonial actions or family court proceedings. A court in any matrimonial action or family *463 court proceeding involving a demand for support, alimony, maintenance, distributive awards or special relief in matrimonial actions may exercise personal jurisdiction over the respondent or defendant notwithstanding the fact that he or she no longer is a resident or domiciliary of this state, or over his or her executor or administrator, if the party seeking support is a resident of or domiciled in this state at the time such demand is made, provided that this state was the matrimonial domicile of the parties before their separation, or the defendant abandoned the plaintiff in this state, or the claim for support, alimony, maintenance, distributive awards or special relief in matrimonial actions accrued under the laws of this state or under an agreement executed in this state. The family court may in any proceeding under article ten of the family court act exercise personal jurisdiction over a nonresident respondent as provided in such article.”
The Court, in Matter of Nilsa B.B. v Clyde Blackwell H. (84 AD2d 295, 297), interprets the "claim for support” part of this section of the CPLR to mean that "the Legislature intended the proviso at issue to apply only where the subject proceeding seeks enforcement of a pre-existing obligation which has become embodied in an order or judgment of a court”.
The petitioner relies upon 1 Weinstein-Korn-Miller, New York Civil Practice 302.19 (at 3-142.36) to bolster her argument that since a claim for support arose in New York, Family Court may exercise jurisdiction over the respondent, particularly in light of section 154 (b) of the Family Court Act.
The court has reviewed section 154 (b) of the Family Court Act and its legislative history. This section authorizes the Family Court to send process outside of the State in a support case where jurisdiction exists under CPLR 302 (b). A list of minimum contacts is included within section 154 (b), purportedly to instruct the court as to when out-of-State service is authorized. Under these minimum contacts, this court would arguably be able to exercise jurisdiction over the respondent. Upon close scrutiny of the statute and the legislative history, however, this court believes that section 154 (b) of the Family Court Act is narrowly geared towards authorizing the court to send process without the State "subject to the jurisdiction of the court under section three hundred one or three hundred two of the civil practice law and rules” (emphasis added).
This interpretation must be considered in light of the fact that the petitioner has an unambiguous remedy under an *464 other statute, namely the Uniform Support of Dependents Law (hereafter USDL), found at Domestic Relations Law §§ 30 to 43. Section 34 (1) of said law provides that: "The court shall have jurisdiction regardless of the state of last residence or domicile of the petitioner and the respondent and whether or not the respondent has ever been a resident of the initiating state” (emphasis added). The legislative history of this section, amended in 1959, is specifically addressed to situations where the parties live in different jurisdictions making it "difficult or impossible for any court to order a recalcitrant spouse or other person owing support to perform in accordance with his legal duties * * * Briefly, these laws are effective because they afford a means of conducting a single support proceeding partly in the courts of the petitioner’s jurisdiction and partly in the courts of the jurisdiction where the defendant is found.” (1959 NY Legis Ann, at 204.) "It is New York contacts that determine whether jurisdiction may constitutionally be asserted in New York” (1 Weinstein-Korn-Miller, NY Civ Prac ¶ 302.19, at 3-142.37). In the instant case, the respondent has had absolutely no contact with this State. In this type of case, the Legislature specifically designed the USDL to dispense with the requirements of personal jurisdiction under the CPLR, and fashioned a statutory scheme in accordance therewith.
Recent developments in the area of child support enforcement would seem to bolster the petitioner’s argument. Certainly, the spirit and intent of the law is to make it easier to enforce support obligations. The Legislature has not yet seen fit to reflect this intent in a statute which would permit an action such as petitioner contemplates. This may be unfortunate, but this court is of limited jurisdiction and unable to address the equities of petitioner’s claim.
After reviewing the Arizona orders, this court finds that the petitioner has presented no proof to support her allegation that there were divorce or any other proceedings in New York. Hence, the petitioner’s claim cannot be said to accrue under the laws of this State or under an agreement executed in this State, pursuant to CPLR 302 (b). For these reasons, now, therefore it is ordered, that the order of the Hearing Examiner dated June 23, 1992 is vacated, and it is further ordered, that all proceedings regarding this matter filed in this court are hereby dismissed without prejudice.